IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT HOROWITZ, et al.        :

    v.                         :   Civil Action No. DKC 19-2459

BRUCE SHERMAN, et al.          :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this challenge to a collections action are the motions to dismiss filed by Defendants Selzer Gurvitch Rabin Wertheimer & Polott, P.C. ("Selzer"), Maury S. Epner, and Patrick J. Kearney (collectively, the "Selzer Defendants") (ECF No. 18), and by Defendants the Montgomery County Sheriff's Office ("MCSO"), Bruce Sherman, Yorgos Balaras, Robin Lewis, Peterson Pichardo, Omar Rivera, Nelson Rosales, and Kevin Brown (collectively, the "Law Enforcement Defendants") (ECF No. 20), and the motion for leave to amend filed by *pro se* Plaintiffs Cathy, Robert, and Elizabeth Horowitz (collectively, "Horowitzes" or "Plaintiffs") (ECF No. 23).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6. For the following reasons, the motions to dismiss will be granted.  The motion for leave to amend will be denied but, as will be discussed, amendment may be permissible for a limited

reason not addressed by Plaintiffs' motion and therefore Plaintiffs will have 21 days within which to file another motion for leave to amend.

## I. Background[1]

This case is the latest in a long history of litigation. The facts relevant to this action begin November 2014, when Selzer obtained a judgment against Cathy and Robert Horowitz for unpaid legal fees in the Circuit Court for Montgomery County, Maryland. After entry of judgment, Selzer began collection efforts.

In January 2015, Selzer filed a motion for forcible entry to levy upon personal property in the Horowitzes' home. Cathy and Robert Horowitz objected to the motion. In April 2015, Circuit Court Judge Michael D. Mason denied the motion but "ordered in the alternative that [Cathy and Robert Horowitz] admit any 'appraiser' designated by Selzer . . . to catalog and photograph all personal property." (ECF No. 1, ¶ 16). Cathy and Robert Horowitz did not comply with the appraiser order.

Selzer moved for a show cause order seeking to hold Cathy and Robert Horowitz in contempt. (ECF No. 18-1, at 4). "On October 21, 2015, the Circuit Court conducted a show cause hearing, found both Cathy and Robert Horowitz in contempt, and

---

[1] Unless otherwise noted, the facts outlined here are set forth in the complaint and construed in the light most favorable to Plaintiffs.

directed Robert Horowitz to serve 30 days incarceration in the local detention center." (*Id.*). The Circuit Court "deferred the sentence of incarceration until November 20, 2015, and provided that Mr. Horowitz could purge the contempt by admitting the sheriff's deputies to his home for the purpose of conducting an inventory and levy." (*Id.*, at 4-5). Cathy and Robert Horowitz continued to refuse entry to the sheriff's deputies.

On December 14, 2015, Selzer moved for a body attachment for the arrest of Robert Horowitz. "After a hearing on April 13, 2016, [the Circuit Court] denied the body attachment and gave [Cathy and Robert Horowitz] until April 18, 2016 to permit the search and inventory of their home." (ECF No. 18-1, at 11). Cathy and Robert Horowitz did not permit the search and inventory.

Selzer again moved for a body attachment and the Circuit Court granted the motion, over Cathy and Robert Horowitzes' objection, on July 28, 2016. (ECF No. 18-1, at 11). The Circuit Court issued a body attachment order on August 2, 2016. (*Id.*). Plaintiffs allege that, on August 24, 2016, Messrs. Epner and Kearney, "their counsel, counsel for the MCSO, and possibly others, were present on a phone call together and decided to seek enforcement of the body attachment." (ECF No. 1, ¶ 20). On August 25, 2016, Officer Sherman approved enforcement of the body attachment and Officers Brown and

3

Rosales arrested Robert Horowitz at his residence. (*Id.*, ¶¶ 22-23). Plaintiffs allege that Officers Brown and Rosales effectuated the arrest "violently" and that the arrest "result[ed] in several injuries." (*Id.*, ¶ 23). Plaintiffs elaborate that Officer Brown "made several unprovoked, loud, derogatory comments about Robert Horowitz, and his purported religious views," (*id.*, ¶ 25), and that Officer Rosales "loudly and profanely cursed" Robert Horowitz (*id.*, ¶ 23). One day after his arrest, Robert Horowitz consented to a search of his dwelling and Officers Balaras, Lewis, Pichardo, and Rivera searched, inventoried, and photographed the Horowitzes' property.[2] (*Id.*, ¶ 27-29).

On August 26, 2019, the Horowitzes initiated the present action and filed a complaint asserting four claims: (1) violation of 42 U.S.C. § 1983, alleging violations of 18 U.S.C. § 1951 and of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution (Count I); (2) violation of 42 U.S.C. § 1983, styled as a *Monell* claim (Count II); (3) violation of 42 U.S.C. § 1985 (Count III); (4) abuse of process (Count IV). (ECF No. 1). Both the Law Enforcement Defendants and the Selzer Defendants filed motions to dismiss on January 17, 2020. (ECF Nos. 18; 20). Plaintiffs filed a

---

[2] Plaintiffs' characterize Robert Horowitz's consent as coerced. (ECF No. 1, ¶ 27).

consolidated opposition to the motions to dismiss and also requested leave to amend. (ECF No. 23). The Selzer Defendants filed a response in opposition to Plaintiffs' request for leave to amend and a reply in support of their motion to dismiss. (ECF No. 26). The Law Enforcement Officers filed a reply in support of their motion to dismiss (ECF No. 27), and a response in opposition to Plaintiffs' request for leave to amend (ECF No. 28). Plaintiffs filed a consolidated reply in support of their request for leave to amend. (ECF No. 29).

**II.   Standard of Review**

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is

entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* In reviewing a motion to dismiss, "a federal court may consider matters of public record such as documents from prior state court proceedings." *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009).

**III. Analysis**

    **A.   Defendants' Motions to Dismiss**

        **1.   Montgomery County Sheriff's Office**

The Law Enforcement Defendants first contend, correctly, that the MCSO "is not a separate legal entity subject to suit." (ECF No. 20-1, at 8). Plaintiffs seemingly concede this point. (ECF No. 23, at 12) ("The *sui juris* issue was a good faith mistake that resulted in no prejudice, because Sheriff Popkin was served for the [MCSO] in accordance with his instructions."). The MCSO is not an entity capable of being sued under Maryland law. *See Hines v. French*, 157 Md.App. 536, 573 (2004) ("County police departments are agents of the State and should not be viewed as separate legal entities."); *Boyer v. State*, 323 Md. 558, 572 n.9 (1991) ("[T]he 'Sheriff's Department' is not an entity capable of being sued."); *Jarvis v.*

6

*Montgomery Cty.*, No. 11-00654-AW, 2011 WL 5547979, at *3 (D.Md. Nov. 14, 2011) ("Under [Fed.R.Civ.P. 17(b)], a plaintiff may bring suit against any entitle capable of being sued. Under Maryland law, the Sheriff's Office is not such an entity."). Plaintiffs' allegations against the MCSO fail to state a claim and will be dismissed.

### 2. Quasi-Judicial Immunity

The Law Enforcement Defendants next contend that "[a]bsolute quasi-judicial immunity bars this suit against the individual deputy defendants." (ECF No. 20-1, at 8). Plaintiffs disagree and argue that the United States Court of Appeals for the Fourth Circuit, in an earlier, related case, determined that qualified immunity, not quasi-judicial immunity, applied to law enforcement officers. (ECF No. 23, at 2 (citing *Horowitz v. Mason*, 681 F.App'x 238, 240-41 (4th Cir. 2017))). Plaintiffs contend that Defendants do not seek qualified immunity here. (*Id.*).

Quasi-judicial immunity bars Plaintiffs' suit, as pleaded, against the Law Enforcement Defendants. As Judge Blake has noted:

> Absolute quasi-judicial immunity extends to non-judicial officers "performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). The basis for affording non-judicial officials absolute immunity is to avoid the "danger

7

> that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly [would] vent their wrath on clerks, court reporters, and other judicial adjuncts." *Sindram v. Suda*, 986 F.2d 1459, 1461 (D.C. Cir. 1993) (alteration in original) (quoting *Dellenbach v. Letsinger*, 889 F.2d 755, 763 (7th Cir. 1989)). Courts have therefore extended absolute immunity to protect, among others, clerks of court, law enforcement officers, and others who enforce court orders. *See*, *e.g.*, *Foster v. Walsh*, 864 F.2d 416, 417-18 (6th Cir. 1988) (holding the clerk of court to be absolutely immune for issuing an erroneous warrant pursuant to the court's order); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238-39 (7th Cir. 1986) ("[P]olice officers, sheriffs, and other court officers who act in reliance on a facially valid court order are entitled to quasi-judicial immunity from suit.").

*Kendrick v. Cavanaugh*, No. 10-2207-CCB, 2011 WL 2837910, at *4 (D.Md. July 14, 2011). Plaintiffs' argument about the dearth of Fourth Circuit case law regarding the applicability of quasi-judicial immunity to law enforcement officers is unpersuasive. The Fourth Circuit has recognized that quasi-judicial immunity "extends to the judge's subordinates for functions that are more administrative in character that have been undertaken pursuant to the judge's explicit direction." *In re Mills*, 287 F.App'x 273, 279 (4th Cir. 2008) (alterations and quotation marks omitted). The Fourth Circuit emphasized "the distinction between protection from liability simply for following a judge's order and protection from liability for carrying out a judge's order in a manner not sanctioned by the judge." *Id.*

Here, Plaintiffs allege that Officer Sherman "approved enforcement of the body attachment" order, that Officers Brown and Rosales "violently arrested Robert Horowitz at his residence, resulting in several injuries[,]" that Officer Rosales "presented Mr. Horowitz with Judge Mason's contempt and body attachment orders," and that, after Mr. Horowitz consented to the search, Officers Balaras, Lewis, Pichardo, and Rivera "proceeded to search, inventory[,] and photograph the family's property[.]"  (ECF No. 1, ¶¶ 22-29).  The allegations against Officers Balaras, Lewis, Pichardo, Rivera, and Sherman merely assert that they took action to carry out Judge Mason's orders. The allegations against Officers Brown and Rosales, however, suggest that Officers Brown and Rosales may have carried out Judge Mason's orders in an unsanctioned manner by using excessive force.  The United States Court of Appeals for the Third Circuit recently explained the limits of quasi-judicial immunity in a case involving an excessive force claim.  *See Russell v. Richardson*, 905 F.3d 239 (3rd Cir. 2018).  The Third Circuit concluded:

> Quasi-judicial immunity extends only to the acts authorized by court order, i.e., to the execution of a court order, and not to the manner in which it was executed. . . . Because an officer's fidelity to the specific order of the judge marks the boundary for labeling his act quasi-judicial, and a court order carries an implicit caveat that the officer follow the Constitution in executing it, where the claim is that

an officer exceeded those bounds, quasi-judicial
immunity does not stand in the way.

*Id.* at 250 (alterations, citations, footnotes and quotation marks omitted).

The *Russell* limit to quasi-judicial immunity would apply if Plaintiffs challenge the *manner* in which Defendants executed the Circuit Court's orders. Plaintiffs' complaint is somewhat confused, however, with regard to its references to constitutional provisions. The Fourth Amendment challenge focuses on the warrantless nature of the inventory and levy. (ECF No. 1, ¶¶ 28, 37, 41-50, 54, 62). Robert Horowitz does not purport to raise directly a Fourth Amendment excessive force claim.[3] Instead, he mistakenly refers to the Fifth and Fourteenth Amendments in referring to the violent arrest. (*Id.*, ¶ 63). In the current complaint, the legality of the orders themselves represents Plaintiffs' "core contention" – not the actions of the Law Enforcement Defendants. (ECF No. 23, at 1). The Law Enforcement Defendants were acting as an arm of the court when they conducted the inventory and levy, and they are therefore immune from suit to the extent they were carrying out the orders. Plaintiffs' claims, as currently pled, against the

---

[3] Even if Robert Horowitz did intend to raise an excessive force claim, his allegations here that the arrest was "violent" and resulted in injuries would be insufficient to state a claim. He must articulate facts, not just conclusions.

Law Enforcement Defendants will be dismissed.[4] As will be discussed, however, if Plaintiffs believe they can adequately plead an excessive force claim against Officers Brown and Rosales, they will be given an opportunity to try.

Given the dismissal of MCSO and the absolute quasi-judicial immunity of the remaining Law Enforcement Defendants, only Counts I, III, and IV remain against the Selzer Defendants and only Elizabeth Horowitz brings these claims.[5]

### 3. 42 U.S.C. § 1983 (Count I)

Count I alleges violation of 42 U.S.C. § 1983. Under § 1983, a plaintiff may file suit against any "person who, under color of [law] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" To state a

---

[4] Moreover, even if absolute quasi-judicial immunity did not apply, the Law Enforcement Defendants enjoy qualified immunity, which "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Merely carrying out court orders is the quintessential example of "good faith." *See, Messerschmidt v. Millender*, 565 U.S. 535, 546–48 (2012).

[5] The Selzer Defendants observed that "according to the prayers for relief in each Count, only Counts I, III, and IV are alleged against [them], and *only Elizabeth Horowitz* brings those three Counts against them." (ECF No. 18-1, at 14 (emphasis in original)). Plaintiffs do not contest this observation. (ECF No. 29, at 10-11 ("[The Selzer Defendants] admit . . . that only Elizabeth Horowitz is suing them.")).

11

claim, a plaintiff must allege that: (1) a right secured by the Constitution or laws of the United States was violated and (2) the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

The Selzer Defendants argue that Elizabeth Horowitz fails to state a claim because they did not act under color of state law and because she did not adequately plead the constitutionally and statutorily protected rights upon which the Selzer Defendants allegedly infringed.[6]  Plaintiffs allege that the Selzer Defendants conspired with state officials to deprive Elizabeth Horowitz of rights and cite *Lugar v. Edmondson Oil*, 457 U.S. 922, 941 (1982), to support their argument that the

---

[6] The Selzer Defendants also argue, in a footnote, that the doctrine of collateral estoppel bars Plaintiffs' § 1983 claim. (ECF No. 18-1, at 16-17 n.5).  They point to this court's earlier decision in *Horowitz v. Mason*, No. 15-3478-DKC, 2016 WL 1536321 (D.Md. Apr. 15, 2016).  In the earlier case, the Horowitzes filed a complaint against Messrs. Epner and Kearney, among others, and alleged a § 1983 violation.  Plaintiffs argue that collateral estoppel does not bar this action because the Selzer Defendants had not (successfully) moved for the body attachment order when the earlier case was decided.  (ECF No. 23, at 10).  The Selzer Defendants do not address Plaintiffs' argument in their reply.  (ECF No. 26).

Selzer Defendants acted under color of law. (ECF No. 1, ¶ 40). Plaintiffs elaborate that the Selzer Defendants "repeatedly threatened over several months to use force and violence to arrest Robert Horowitz."[7] (*Id.*, ¶ 53).

"*Lugar* involved a § 1983 claim alleging the unconstitutional deprivation of property under Virginia's pre-judgment attachment statute. In *Lugar*, the Supreme Court [of the United States] held that that unlawful application of the pre-judgment attachment statute did not constitute the state action required for a successful § 1983 claim." *Jones v. Poindexter*, 903 F.2d 1006, 1011 (4th Cir. 1990) (citing *Lugar*, 457 U.S. at 940). The Supreme Court held that the plaintiff "did present a valid cause of action under § 1983 *insofar as he challenged the constitutionality of the Virginia statute*[, but] he did not insofar as he alleged only misuse or abuse of the statute." *Lugar*, 457 U.S. at 942 (emphasis added); *see also Wyatt v. Cole*, 504 U.S. 158, 161-62 (1992) (noting that *Lugar* allowed § 1983 liability for private parties "if the statute was constitutionally infirm). In *Poindexter*, the Fourth Circuit affirmed the district court's dismissal of a § 1983 action against a private party who attempted to collect on a state

---

[7] Even if Robert Horowitz raised a § 1983 excessive force claim against Officers Brown and Rosales and alleged that the Selzer Defendants conspired with Officers Brown and Rosales to threaten violence and to use force, Elizabeth Horowitz does not have an excessive force claim against the Selzer Defendants.

13

court judgment. 903 F.2d at 1011. The Fourth Circuit held that there was no viable § 1983 claim against the defendant because the plaintiff alleged that the private party defendant illegally and improperly used state statutes and processes. The Fourth Circuit also noted that a private party's "use of state process to attempt to enforce the judgment" does not "rise to the level of action under color of law." *Id.* Plaintiffs assert that the Selzer Defendants violated Elizabeth Horowitz's rights by requesting the body attachment order to enforce the judgment. (ECF No. 1, ¶ 18; ECF No. 23, at 10-12). The Selzer Defendants' use of Maryland post-judgment procedures to enforce their judgment against Cathy and Robert Horowitz does not constitute action under color of state law as to Elizabeth Horowitz and Count I will be dismissed.

### 4.  42 U.S.C. § 1985 (Count III)

Although not specified by subsection, Count III appears to allege violation of 42 U.S.C. § 1985(3). (ECF No. 1, ¶ 84 ("Said conspiracy denied [P]laintiffs their equal protections, privileges and immunities under the law.")). To state a claim under 42 U.S.C. § 1985(3), a plaintiff must prove:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)). "Allegations of 'parallel conduct and a bare assertion of a conspiracy' are not enough for a claim to proceed." *Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *A Soc'y Without A Name*, 655 F.3d at 347). Elizabeth Horowitz does not allege that any specific class-based, invidiously discriminatory animus motivated the Selzer Defendants to support their § 1985(3) claim.[8] Count III will be dismissed.

### 5. Abuse of Process (Count IV)

Count IV is an abuse of process claim. "The tort of abuse of process occurs when a party has 'willfully misused criminal or civil process' against another party for a purpose different than the proceeding's intended purpose and thereby caused that party damage (e.g., arrest, seizure of property, economic injury)." *State v. Rendelman*, 404 Md. 500, 517 n.9 (2008). "Process" under Maryland law means "any written order issued by a court to secure compliance with its commands or to require

---

[8] Indeed, Plaintiffs seem to concede that the complaint does not allege animus when they state "[b]ias will be pleaded in the amended complaint." (ECF No. 29, at 6-7). Moreover, Elizabeth Horowitz also fails to state a § 1985(3) claim because she has no claim under § 1983. *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 349 (4th Cir. 2013).

15

action by any person and includes a summons, subpoena, an order of publication, a commission or other writ." Md. Rule 1-202(w).

There are two "essential elements" of abuse of process tort: "first, an ulterior purpose, and second, a [willful] act in the use of the process not proper in the regular conduct of the proceeding." *Attorney Grievance Comm'n of Md. v. Roberts*, 394 Md. 137, 160 (2006) (quoting *Palmer Ford, Inc. v. Wood*, 298 Md. 484, 511 (1984). "Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id.* Here, the Selzer Defendants have done nothing more than carry out Maryland's post-judgment procedures to an authorized conclusion – the satisfaction of their judgment against Cathy and Robert Horowitz. Elizabeth Horowitz fails to state an abuse of process claim and Count IV will be dismissed.

**B.  Plaintiffs' Motion for Leave to Amend**

In their opposition to Defendants' motions to dismiss, Plaintiffs request leave to amend. (ECF No. 23, at 12; ECF No. 29). Defendants oppose this request. (ECF No. 26, at 1-5; ECF No. 28).

16

When, as here, the right to amend as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed.R.Civ.P. 15(a)(2).  Fed.R.Civ.P. 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires[,]" and commits the matter to the discretion of the district court.  *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011).  Denial of leave to amend is appropriate "*only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.*"  *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (emphasis in original) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).  Leave to amend may be denied as futile "if the proposed amended complaint fails to satisfy the requirements of the federal rules[,]" including federal pleading standards.  *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (*quoting United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)).

Plaintiffs' currently requested amendments would be futile.  Plaintiffs identify the alleged invalidity of the appraiser order as their "core contention" and argue that the resultant orders were also allegedly invalid.  (ECF No. 23, at 1 ("Plaintiffs' core contention is that the appraiser order was

17

invalid, and that therefore the contempt order for violating it was invalid, as was the purge requirement within that order requiring the Horowitzes to consent to the warrantless search of their dwelling and the body attachment to enforce it."). Plaintiffs already sought to challenge the validity of Judge Mason's orders to enforce the judgment and this court determined that *Younger* abstention was warranted while there was an ongoing state judicial proceeding. *Horowitz v. Mason*, No. 15-3478-DKC, 2016 WL 1536321, at *2-4 (D.Md. Apr. 15, 2016). The Maryland Court of Special Appeals has since determined that the appraiser order is not appealable because it is not a final judgment. *Horowitz v. Selzer, Gurvitch, Rabin, Wertheimer, Polott, & Obecny, P.C.*, 2016 WL 7106897 (Md.App. 2016). The Court of Special Appeals emphasized:

> This should be a simple collections case. There is no doubt whatsoever that the Horowitzes owe the money. There is no doubt that [Selzer] is entitled to collect the debt. The disputes lie entirely in how [Selzer] can collect, a legitimate objective the Horowitzes have thwarted actively, delayed now for nearly two years, and, for what it's worth, mischaracterized and overdramatized. As if to underscore these points, we can't reach the merits with regard to two of the three orders the Horowitzes have appealed because those orders aren't appealable. . . .
>
> The Horowitzes mischaracterize the contents of the first order, which authorized an appraiser, and the posture of the case. This is not a criminal case, and the court has never authorized the Sheriff (or any other law enforcement authority) to conduct a warrantless search of the Horowitzes' home. This is

18

> now a collections case, and the Horowitzes' assets are subject to execution. After [Selzer] obtained its judgment, the Clerk issued a writ "directing the sheriff to levy upon property of the judgment debtor to satisfy a money judgment." Md. Rule 2-641(a). But when the Sheriff arrived to carry out that order, the Horowitzes turned him away, which led to further litigation and, eventually, the order permitting [Selzer] to hire an appraiser — at its own expense — and requiring the Horowitzes to give the appraiser access to their home for the purpose of conducting the appraisal.

*Id.* at *2 (footnotes omitted). Plaintiffs' self-professed core contention has been rejected and Plaintiffs' proposed amendments to advance their core contention are futile.

Nonetheless, Plaintiffs will be permitted to file another motion for leave to amend albeit for limited reasons not directly addressed in their motion. As discussed *supra*, Robert Horowitz does not articulate a Fourth Amendment excessive force claim. If, in good faith, he alleges that the force used exceeded that which was reasonably necessary to effectuate his arrest, he may state a claim. For that reason, Plaintiffs' motion for leave to amend will be denied and Plaintiffs will have 21 days to file another motion for leave to amend.[9]

---

[9] Plaintiffs should note that a "federal court has the power to issue prefiling injunctions where vexatious conduct hinders the court from fulfilling its constitutional duty." *Whitehead v. Viacom*, 233 F.Supp.2d 715, 726 (D.Md. 2002) (quoting *Tucker v. Seiber*, 17 F.3d 1434 (table), 1994 WL 66037, at *1 (4th Cir. 1994)). There are five factors to consider when evaluating a prefiling injunction: "(1) the litigant's history of vexatious litigation; (2) whether the litigant has an objective good faith belief in the merit of the action; (3) whether the litigant is

19

**IV.   Conclusion**

For the foregoing reasons, the motions to dismiss will be granted and the motion for leave to amend will be denied. Plaintiffs may file another motion for leave to amend within 21 days.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

represented by counsel; (4) whether the litigant has caused needless expense or unnecessary burdens on the opposing party and/or the court; and (5) the adequacy of other sanctions." *Id.* "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id.*