```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

                                    :
ROBERT HOROWITZ, et al.
                                    :

     v.                             :    Civil Action No. DKC 19-2459

                                    :
BRUCE SHERMAN, et al.
                                    :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this *pro se* civil rights case are (1) a motion for summary judgment filed by Defendant Sheriff's Deputy Kevin Brown, (ECF No. 78), and (2) a motion to strike or, in the alternative, to seal filed by Defendant Sheriff's Deputy Nelson Rosales, (ECF No. 92).  The issues have been fully briefed, and the court now rules, no hearing being necessary.  Local Rule 105.6.  For the following reasons, the motion for summary judgment will be granted and the motion to strike or seal will be granted in part and denied in part.

**I.   Factual Background**

In November 2014, Selzer Gurvitch Rabin Wertheimer & Polott, P.C. ("Selzer") obtained a judgment against Plaintiff Robert Horowitz and his wife Cathy Horowitz for unpaid legal fees in the Circuit Court for Montgomery County, Maryland.  An earlier memorandum opinion outlines the protracted history of Selzer's collection efforts.  (*See* ECF No. 30, at 2-4).  Ultimately, after

Cathy and Robert Horowitz failed to comply with an appraiser order and were found in contempt, the Circuit Court issued a body attachment order for the arrest of Robert Horowitz on August 2, 2016.  (ECF No. 78-2, at 1-2).

According to Deputy Brown, multiple unsuccessful attempts to make contact with Mr. Horowitz were made by deputies in the following weeks.  (ECF No. 78-3, at 8:4-20 (Brown Depo.)).[1]  On August 25, Deputies Brown and Rosales were ordered to try again. (ECF No. 78-3, at 8:15-9:8, 64:10-65:1; 78-8, at 2 (Arrest Summary)).  Both Deputies testify that they did not know of Mr. Horowitz before receiving his body attachment order.  (ECF Nos. 78-3, at 7:9-14, 9:17-10:7; 78-4, at 9:3-6 (Rosales July Depo.); 78-5, at 5:17-6:1 (Rosales August Depo.)).  Nor were they provided any personal information about him or special directions for his arrest.  (ECF Nos. 78-3, at 9:9-14, 13:3-7; 78-4, at 15:5-7, 112:21-113:21; 78-5, at 6:2-4).  Around midday, (ECF Nos. 40-2, ¶ 5 (Rosales Affidavit); 40-3, ¶ 7 (Brown Affidavit)), they went to Mr. Horowitz's neighborhood and parked two doors down, (ECF Nos. 78-3, at 12:16-17, 28:17-20; 78-4, at 9:14-16).  Within fifteen-to-twenty minutes, they saw Mr. Horowitz walk out of his home toward his mailbox.  (ECF Nos. 78-3, at 12:19-20, 31:1-14;

---

[1] Deposition citations are to the transcript page number, rather than the ECF page number.

78-4, at 10:17-21). At this point, the Defendants' versions of events diverges somewhat from Mr. Horowitz's.

The Defendants testify that Deputy Rosales approached Mr. Horowitz, calling out to him by name and identifying himself as an employee of the Montgomery County Sheriff's Office ("MCSO"). (ECF Nos. 78-3, at 31:18-32:3, 51:13-21; 78-4, at 11:1-4). Mr. Horowitz then turned around and "started to try to run into [his] house." (ECF No. 78-3, 52:7-10; *see also* ECF No. 78-4, at 11:4-5, 18:15-17). According to Deputy Rosales, he caught Mr. Horowitz and grabbed his left arm, but both men were still running and their "feet got tangled up and that's when [Mr. Horowitz] went to the ground." (ECF No. 78-4, at 29:5-10). According to Deputy Brown, Mr. Horowitz tussled with or resisted Deputy Rosales and then fell forward onto the ground. (ECF Nos. 78-3, at 52:10-16, 53:4-54:18). Deputy Brown then grabbed Mr. Horowitz's free arm and either Deputy Rosales alone or the two Deputies working together handcuffed Mr. Horowitz. (ECF Nos. 78-3, at 52:15-53:3; 78-4, at 30:5-10).

According to Mr. Horowitz, he had gotten his mail and was walking back to his front door when he heard people running toward him. (ECF No. 78-7, at 79:17-80:1 (Horowitz Depo.)). He didn't hear anyone call out to him beforehand. (*Id.*, at 80:21-81:14). "As [he] looked up, coming in front of [him] and from the right, Deputy Rosales grabbed [him] and tackled [him]." (*Id.*, at 80:1-3, 85:21-86:1). More specifically, Deputy Rosales came up in front

3

of Mr. Horowitz, grabbed his left arm with both hands and then "pulled down, reached around, and drove [him] into the ground," shouting "Horowitz mother f---er." (*Id.*, at 86:4-88:20, 92:1-17, 93:4-13). The whole encounter lasted a couple seconds. (*Id.*, at 90:17-91:3). Separately, Mr. Horowitz asserts that Deputy Brown "did all the handcuffing." (*Id.*, at 84:15-20, 94:3-21).

## II.  Procedural Background

In August 2019, Mr. Horowitz, his wife Cathy, and their daughter Elizabeth, filed this suit without legal representation against the MCSO, seven MCSO deputies (including Deputies Brown and Rosales), Selzer, and two Selzer attorneys. (ECF No. 1). In May 2020, all claims were dismissed with prejudice except a potential excessive force claim by Mr. Horowitz against Deputies Brown and Rosales. (ECF Nos. 30; 31). In September 2020, Mr. Horowitz was permitted to amend his complaint to allege more clearly that the Deputies tackled him without justification and handcuffed him too tightly. (ECF Nos. 36, at 9-12; 38 (amended complaint)). In November 2020, before discovery had commenced, Deputies Brown and Rosales were granted partial summary judgment on Mr. Horowitz's handcuffing allegations on qualified immunity grounds. (ECF No. 44, at 4-9).

Mr. Horowitz's Section 1983 excessive force tackling claim is the sole claim remaining in the case. After discovery was largely completed, although disputes continue (*see, e.g.*, ECF No. 102),

4

Deputy Brown filed the pending motion for summary judgment in September 2021, (ECF No. 78). Mr. Horowitz opposed and Officer Brown replied. (ECF Nos. 91; 93). Deputy Rosales separately moved to strike in part, or seal entirely, an exhibit attached to Mr. Horowitz's opposition. (ECF No. 92). Mr. Horowitz opposed and Deputy Rosales replied. (ECF Nos. 94; 95). Deputy Rosales did not, however, move for summary judgment and Mr. Horowitz's case against him will proceed to trial.

### III. Motion for Summary Judgment

#### A. Standard of Review

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[S]ummary judgment should be granted only when it is perfectly clear that no issue of material fact exists." *Raynor v. Pugh*, 817 F.3d 123, 129 n.2 (4th Cir. 2016) (quotation omitted). A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Liberty Lobby*, 477 U.S. at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion,"

5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted), but "a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences," *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001).

To prevail on a motion for summary judgment, the moving party generally bears the burden of showing that there is no genuine dispute as to any material fact. No genuine dispute of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element that he bore the burden to prove. *Celotex*, 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that there is a genuine issue for trial. *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D.Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014).

**B.   Analysis**

"The Fourth Amendment prohibits law enforcement officers from using excessive or unreasonable force in the course of making an arrest or otherwise seizing a person." *Betton v. Blue*, 942 F.3d 184, 191 (4th Cir. 2019). Courts analyze excessive force claims using "an 'objective reasonableness' standard," looking to the totality of the circumstances of each case. *Yates v. Terry*, 817 F.3d 877, 884-85 (4th Cir. 2016) (quoting *Graham v. Connor*, 490

6

U.S. 386, 395 (1989)). They therefore "do not consider the officer's intent or motivation, [but] ask whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force[.]" *Hupp v. Cook*, 931 F.3d 307, 321-22 (4th Cir. 2019) (cleaned up). This requires balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (quotation omitted).

Deputy Brown is entitled to summary judgment on Mr. Horowitz's remaining excessive force claim against him. The sole theory of liability for that claim is that excessive force was used against Mr. Horowitz when he was tackled. All parties agree, however, that Deputy Rosales tackled Mr. Horowitz, not Deputy Brown. Because Deputy Brown did not use any force against Mr. Horowitz, he cannot be liable on an excessive force claim. Nor can he be vicariously liable for Deputy Rosales' actions, as Mr. Horowitz suggests by pointing to Deputy Brown's possible supervisory role over Officer Rosales and arguing that Deputy Brown led and choreographed the "ambush." (ECF No. 91, at 2 (citing ECF No. 78-3, at 7:7), 5). Even if these references could satisfy Mr. Horowitz's burden, supervisory liability is not recognized under Section 1983. See *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir.2004).

Mr. Horowitz's opposition otherwise sidesteps the merits of the excessive force tackling claim and attempts either to introduce new claims or revive claims that this court has already resolved. He argues that Deputy Brown conducted improper surveillance, failed to intervene to stop the use of excessive force, and fastened his handcuffs too tightly. (ECF No. 91, at 5-8). He also argues that Deputy Brown unlawfully endangered him, in violation of the Eighth Amendment prohibition on cruel and unusual punishment, "by portraying [him] to other inmates as a person with a Jewish last name who was reluctant to reveal his religion in a setting where it is notoriously dangerous to do so." (*Id.*, at 6 & n.2).

First, Mr. Horowitz has never mentioned improper surveillance or endangerment or that Deputy Brown had a duty to intervene. The only claim pending in this case is styled as a "42 U.S.C. § 1983 – Excessive Force" claim. (ECF No. 38, at 21). Second, even if Mr. Horowitz could proceed with these new claims, none would succeed. Any surveillance by Deputy Brown could not have intruded on any reasonable privacy expectation because it was conducted from a public street. *See Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 340-41 (4th Cir. 2021) ("[P]eople have no reasonable expectation of privacy" in what they "voluntarily convey" to anyone who wants to look.). Mr. Horowitz has not shown, as required under the Eighth Amendment, that he was jailed "under

8

conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Nor did Deputy Brown have the necessary opportunity to intervene to stop Deputy Rosales because, as Mr. Horowitz's own testimony suggests, the entire encounter with Deputy Rosales lasted a couple seconds, (ECF No. 78-7, at 90:17-91:3).  *See Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002).  Lastly, the Deputies have qualified immunity from Mr. Horowitz's handcuffing theory of liability, as this court held in November 2020.  (ECF Nos. 44, at 9).  Mr. Horowitz cannot shoehorn the pending motion into a reconsideration of that earlier decision.

Deputy Brown's motion for summary judgment on Mr. Horowitz's excessive force claim against him will be granted.

**IV. Motion to Strike or Seal**

Under Fed.R.Civ.P. 5.2(e), a court may "require redaction of additional information" beyond that otherwise mandated under Rule 5.2.  A motion to strike or seal must comply with Local Rule 105.11, which requires: "(a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection."  This rule endeavors to protect the common law right to inspect and copy judicial records and documents, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), while recognizing that competing interests sometimes outweigh the

9

public's right of access, *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

In his opposition to Deputy Brown's motion for summary judgment, Mr. Horowitz attached an excerpt of Deputy Rosales' August 2021 deposition. A stipulated order requires that all "sensitive personal information, medical information, or employee personnel information which is in fact confidential" be filed under seal. (ECF Nos. 49, ¶¶ 1(a), 3; 50). Deputy Rosales maintains that the deposition excerpt includes sensitive medical and personnel information. (ECF No. 92, ¶ 5). He seeks either to exclude all parts of the excerpt that Mr. Horowitz does not rely on or to seal the excerpt entirely. (*Id.*, ¶¶ 7-9).

Deputy Rosales' motion will be granted in part and denied in part. The deposition includes medical information that the court assumes is confidential and should remain so. It is far from clear, however, that the personnel information is confidential because Deputy Rosales acknowledges that a "proceeding" was held to investigate the matter. The Deputy has not done enough to justify sealing that information. Nor has he made any effort to justify excluding other non-sensitive information from the record. The motion will therefore be granted as to Deputy Rosales' medical information and otherwise denied. The court will prepare a version of the deposition excerpt in which the medical information is redacted and instruct the clerk to docket it.

**V.   Conclusion**

For the foregoing reasons, Deputy Brown's motion for summary judgment will be granted and Deputy Rosales' motion to strike or seal will be granted in part and denied in part.  A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
